UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

KEENAN JOHNSON,

        Petitioner,

    V.

FLOYD BENNETT, Superintendent,
Coxsackie Correctional Facility,

        Respondent.

**REPORT AND RECOMMENDATION**

01-CV-946

---

## I. INTRODUCTION

Petitioner Keenan Johnson, by and through his attorney of record, Gregory McPhee, Esq., commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254. Petitioner is an inmate at the Attica Correctional Facility. In 1998, he was convicted in a New York State court of Second Degree Murder and Fourth Degree Criminal Possession of a Weapon and was sentenced to a term of imprisonment. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 24).

## II. BACKGROUND

**A.    Facts**

The following factual summary is derived from the trial transcript. On September 29, 1994, Petitioner entered a Chase Manhattan Bank branch in Syracuse, New York. (T at 565-566)[1]. Petitioner attempted to cash a check with Bruce Coy's ("Coy") name in the signature line. (T at 598-99). The teller refused to cash the check because of suspicious activity in Coy's account and because the signature did not match Coy's handwriting. (T at 566, 598, 600).

Later that day, the bank's branch manager contacted Coy to inform him that the bank believed stolen checks were being presented against his account. (T at 566, 575). The bank "froze" Coy's account until such time he could come in and discuss the matter. (T at 566).

However, on October 4, 1994, the building manager at Coy's apartment complex found Coy lying dead on his bedroom floor. (T at 412-414). According to the medical testimony at trial, Coy had been repeatedly stabbed in the neck, had fractured ribs, and was strangled. (T at 770-777). Coy had been murdered approximately one or two days before his body was discovered. (T at 777).

Petitioner lived in the same apartment complex as Coy. (T at 612). On October 5, 1994, the day after Coy's body was discovered, the police observed Petitioner placing two trash bags into a dumpster. (T at 610-613). The police recovered the trash bags and

---

[1] References preceded by "T" are to the transcript pages of Petitioner's trial.

found Coy's apartment rental agreement, several pages with Petitioner's name typed on them, and copies of bills addressed to both Petitioner and Coy. (T at 612, 616-17). The police later questioned Petitioner and Petitioner confessed that he stole and forged Coy's checks. (T at 688). Petitioner told the police that Coy had paid him to run errands. (Id.).

Petitioner also told the police that he witnessed an unidentified person stab Coy in the stomach, that the person then allegedly threatened Petitioner, causing him to run away from the scene. (T at 720-21). Petitioner claimed he was unable to find help, so he returned to Coy's apartment and held him in his arms until he died about an hour later. (T at 721-23). Petitioner then stated that he removed the murder weapon and some other articles so that his fingerprints would not be found in Coy's apartment. (T at 724). Petitioner allegedly disposed of the articles he took in various places. (T at 726).

On May 22, 1997, an Onondaga County Grand Jury returned Indictment Number 97-0534-1, which charged Petitioner with Murder in the Second Degree, in violation of New York Penal Law ("N.Y.P.L.") § 125.25 (1)[2] and Criminal Possession of a Weapon in the Fourth Degree in violation of N.Y.P.L. § 265.01 (2). (Exhibit 3, Appendix at p. 5).[3]

### B.   State Trial Court Proceedings

The Honorable William J. Burke, Onondaga County Court Judge, presided over Petitioner's trial court proceedings. On December 5, 1997, a *Huntley/Wade*[4] Hearing was

---

[2] Unless otherwise indicated, all references to the N.Y.P.L. are to McKinney 1998.

[3] "Exhibit 3" is a part of the state court record submitted by Respondent in this case.

[4] A hearing pursuant to People v. Huntley, 255 N.Y.S.2d 838 (1965), is held to determine the voluntariness of a criminal defendant's statements to the police. A Wade hearing is a hearing to determine the reliability and admissibility of witness identifications. United States v. Wade, 388 U.S. 218

held to determine the voluntariness of Petitioner's statements to the police and to determine the reliability of an identification made after a witness was shown a photograph of Petitioner. On December 16, 1997, Judge Burke held that Petitioner was adequately advised of his constitutional rights and that his statements to the police were voluntarily made. (Exhibit 3, Appendix at p. 47-48). Judge Burke also found that the use of the photograph for identification was "merely 'confirmatory' in nature since both [the witness] and [Petitioner] were familiar with each other at the time or times relevant to the alleged underlying homicide." (Id. at 49).

On January 12, 1998, a Sandoval [5] hearing was conducted just prior to Petitioner's trial. (T at 2). Judge Burke held that the prosecution would be allowed to inquire into Petitioner's convictions for attempted robbery in 1985, 1987, and 1988, as well as his 1994 convictions for grand larceny and criminal possession of a forged instrument. (T at 2-11). Judge Burke also held that the prosecution would be allowed to show that Petitioner pled guilty to forging checks belonging to the victim, Coy, as well as one count of grand larceny in the third degree for stealing money from Coy. (Id.). Coy had been permitted to enter a plea to forgery and grand larceny prior to the trial on the charges involved in this case. (Id.).

Petitioner's trial began on January 13, 1998. On January 16, 1998, the jury found Petitioner guilty of Murder in the Second Degree and Criminal Possession of a Weapon in the Fourth Degree. (T at 1135-37).

---

(1967).

[5] A hearing held pursuant to People v. Sandoval, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974), to determine the extent to which Petitioner, should he decide to testify, could be cross-examined regarding prior crimes and bad acts bearing on his credibility, veracity, or honesty.

On March 6, 1998, Judge Burke sentenced Petitioner to an indeterminate term of twenty-five years to life imprisonment for his conviction of Murder in the Second Degree and one year for his conviction of Criminal Possession of a Weapon in the Fourth Degree to run concurrent to each other. (S at 12)[6].

## C.     State Appellate Proceedings

Petitioner appealed his conviction to the Appellate Division, Fourth Department, of the New York State Supreme Court. Petitioner raised the following eight arguments in support of his appeal: (1) that he received ineffective assistance of trial counsel, (2) that the trial court erred in not suppressing his statements to the police, (3) that the trial court erred in failing to excuse several jurors for cause, (4) that the trial court erred in allowing evidence of Petitioner's parole status, (5) that the prosecutor violated the trial court's Sandoval ruling, (6) that his verdict was against the weight of the evidence, (7) that he was denied the right to a speedy trial, and (8) that cumulative errors denied him of a fair trial.

In addition, Petitioner submitted a *pro se* supplemental brief to the Appellate Division in which he claimed: (9) that his guilt was not proven beyond a reasonable doubt, (10) that rebuttal evidence was improperly introduced at trial, and (11) that he was prejudiced by the introduction of evidence of his prior criminal convictions.

In a decision issued on October 1, 1999, the Appellate Division unanimously affirmed Petitioner's conviction. People v. Johnson, 695 N.Y.S.2d 464 (4th Dep't 1999). On March 8, 2000, the New York Court of Appeals denied Petitioner's application for leave

---

[6]References preceded by "S" are to pages of the transcript of the sentencing proceeding held before Onondaga County Court Justice William Burke on March 6, 1998.

to appeal. People v.Johnson, 94 N.Y. 2d 921 (2000). On April 24, 2001, Johnson filed an application with the Court of Appeals seeking reconsideration and reargument of the March 2000 order denying leave to appeal. (Exhibit 11 at p. 134). By letter dated May 3, 2001, the Clerk of the Court of Appeals advised Petitioner that his request for reconsideration would not be granted. (Id.).

**D. Federal Habeas Corpus Proceedings**

Petitioner, through his attorney, commenced this action on June 8, 2001, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). On September 25, 2001, Respondent filed a motion to dismiss the Petition as untimely. (Docket No. 7 -9). Petitioner filed a response in opposition on October 12, 2001 ( Docket No. 12 ). Respondent then filed a reply in further support of his motion to dismiss, ( Docket No. 15 ) to which Petitioner filed a surreply ( Docket No. 16 ).

The Honorable Gary L. Sharpe, United States Magistrate Judge,[7] denied Respondent's motion by Report and Recommendation on March 28, 2003, which recommendation was later adopted in full by the Honorable David N. Hurd, United States District Judge, on September 3, 2003. See (Docket No. 19); see also Johnson v. Bennett, 2003 WL 1623277, *1 (N.D.N.Y. March 28, 2003).

For the reasons that follow, the Court recommends that Johnson's petition for a writ of habeas corpus be denied and that his petition be DISMISSED.

---

[7]Judge Sharpe is presently a United States District Judge.

## III. DISCUSSION

### A. Federal Habeas Corpus Standard

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits." 28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001). The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted). The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA. Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714,

715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.     Petitioner's Claims**

Petitioner asserts the following three claims in support of this Petition: (1) that his guilt was not proven beyond a reasonable doubt; (2) that cumulative evidence was improperly admitted at trial, which deprived him of a fundamentally fair trial; and (3) that he was denied effective assistance of trial counsel.

### 1.     Sufficiency of the Evidence

Petitioner asserts that the evidence at trial did not establish that he caused Coy's death beyond a reasonable doubt, *i.e.*, that there was insufficient evidence to support the conviction. Respondent argues that Petitioner's claim for habeas relief on this ground must be denied because the evidence at trial was sufficient to establish his guilt. Petitioner raised this claim on direct appeal, and it was rejected by the Appellate Division. Specifically, the Appellate Division held that "the conviction [was] supported by legally sufficient evidence and [was] not against the weight of the evidence." People v. Johnson, 695 N.Y.S.2d at 465.

A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted). A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' " Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)). Rather,

9

"the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at 179 ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

In making this assessment, the reviewing court may neither "disturb the jury's findings with respect to the witnesses' credibility," United States v. Roman, 870 F.2d 65, 71 (2d Cir.1989), nor make its own "assessments of the weight of the evidence[.]," Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996).  Thus, under this standard, a "'federal habeas court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir.1994) (quoting Jackson, 443 U.S. at 326, 99 S.Ct. 2781).

Petitioner argues that the prosecution's presentation of "strained inferences from the petitioner's presence at Bruce Coy's apartment at the time of the killing, coupled with the petitioner's removal of the murder weapon . . . [and] extensive forgery evidence offered by the prosecution to prove motive . . . failed to prove any issue or fact relative to Johnson's alleged culpability for the crimes charged."  (Docket No. 2 at 12).

Essentially, Petitioner argues that the jury should have believed his version of events

rather than the testimony of the prosecution's witnesses and the evidence offered by the prosecution. However, this Court is not free to second-guess the credibility determinations made by the jury. See e.g., Huber v. Schriver, 140 F.Supp.2d 265, 277 (E.D.N.Y.2001) ("[U]nder both the state law ... and federal law, issues of credibility, as well as the weight to be given to evidence, are questions to be determined by the jury...."); Gruttola v. Hammock, 639 F.2d 922, 928 (2d Cir.1981) (rejecting insufficient evidence claim because jury was entitled to believe State's witnesses despite inconsistencies in their testimony and State's evidence).

After reviewing the proof presented at trial, the Court finds that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that Petitioner was guilty of the crimes charged beyond a reasonable doubt. According to the testimony of Detective Pierre Patnode and Sergeant Patrick Lynch at trial, Petitioner admitted to the police that he was in Coy's apartment at the time of the murder, he admitted removing the murder weapon from the crime scene, and he admitted to stealing and forging Coy's checks to benefit himself. (T at 688, 720-21, 724).

Even the testimony of a single uncorroborated witness is sufficient to establish guilt beyond a reasonable doubt. United States v. Danzey, 594 F.2d 905, 916 (2d Cir.) (*per curiam*), *cert. denied sub nom*., Gore v. United States, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979), United States v. Frampton, 382 F.3d 213, 222 (2d Cir. 2004)(noting that testimony of a single uncorroborated witness is generally sufficient to support a guilty verdict). In this case, we have the testimony of two police officers who related damaging admissions from the defendant concerning critical information about the crime.

In this case, the jury heard evidence from both the prosecution and Petitioner, and

chose to credit the prosecution's witnesses and evidence. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have reached the same verdict that Petitioner's trial jury did. In particular, strong evidence of Petitioner's guilt was provided by the testimony concerning Petitioner's presence at the scene of the crime and his subsequent attempt to conceal and dispose of evidence of the crime (including the murder weapon). See Jackson, 443 U.S. at 318-19.

Accordingly, Petitioner's claim for habeas relief on this ground should be DENIED.

### 2. Cumulative Evidence

In his second claim for habeas relief, Petitioner argues that the trial court erred by permitting the prosecution to introduce evidence of his prior forgery conviction involving the murder victim's checks.[8] In addition, Petitioner claims that the trial court improperly allowed the prosecution to introduce repetitive and cumulative evidence regarding the forgery issue.[9] Petitioner argues that he was denied due process as a result of these alleged errors.

To prevail on a claim that an evidentiary error resulted in a deprivation of due process, a habeas petitioner must show that the alleged error was so pervasive as to have deprived him a fundamentally fair trial. United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct.

---

[8] Petitioner did not, at time of trial, challenge the admission of his other prior convictions for attempted robbery committed in 1985, 1987, 1988, as well as his convictions for grand larceny and criminal possession of a forged instrument in 1994.

[9] The prosecution cross-examined Petitioner at trial with respect to his other prior convictions for attempted robbery in 1985, 1987, 1988, as well as his convictions for grand larceny and criminal possession of a forged instrument in 1994. See (T at 914-25). However, the admission of these convictions is not the subject of this habeas corpus Petition.

2392, 49 L.Ed.2d 342 (1976).  Specifically, the habeas court must determine "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.  In short it must have been 'crucial, critical, highly significant.'"  Collins v. Scully, 755 F.2d 16, 19 (2d Cir.1985) (quoting Nettles v. Wainwright, 677 F.2d 410, 414-15 (5th Cir.1982)).

The Appellate Division concluded the fact that Petitioner had forged checks drawn on Coy's account, just prior to the murder, was relevant and properly admitted as to the issue of motive.  Johnson, 695 N.Y.S. 2d at 930.  A trial court's ruling on a Sandoval issue (*i.e.* admission of prior crimes or wrongs) is afforded broad discretion with respect to the weighing of the probative value of such evidence against its possible prejudicial effect.  See Simmons v. Ross, 965 F. Supp. 473, 480 (S.D.N.Y. 1997).

In the present case, this Court finds that the Appellate Division's decision as to this issue was neither contrary to clearly established federal law, nor did it involve an unreasonable application of such law, as determined by the United States Supreme Court.  The evidence of Petitioner's forgery conviction was relevant to the issue of his motive and appears to have been properly admitted in the exercise of the trial court's broad discretion concerning such matters.

It appears that the trial court properly weighed the probative value of the forgery conviction as related to motive against the possible prejudicial effect.  See Lyons v. Girdich, No. 02-CV-3117, 2003 WL 22956991, at *12 (E.D.N.Y. Oct. 15, 2003) (finding that trial court properly admitted evidence concerning petitioner's prior conviction for cashing forged checks); see also Simmons v. Ross, 965 F. Supp. 473, 480 (S.D.N.Y. 1997); Miller

13

v. Portuondo, 151 F. Supp. 2d 245, 248 (E.D.N.Y. 2001).

Moreover, the trial court addressed the possible prejudice by giving the jury a specific limiting instruction regarding the evidence of Petitioner's prior crimes (T at 1100-1101).  As this Court has previously noted, there is a well-established presumption that jurors follow their instructions, Barnard v. Burbary, 452 F. Supp. 2d 178, 193 (W.D.N.Y. 2006).  See also Zafiro v. United States, 506 U.S. 534, 540-41 (1993) (emphasizing that prejudice "can be cured with proper instructions and juries are presumed to follow their instructions") (internal quotation marks omitted)); United States v. Downing, 297 F.3d 52, 59 (2d Cir.2002) (stating that "[a]bsent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions.").

In addition, Detective Patnode's testimony regarding Petitioner's admissions with respect to the forgery provided relevant background evidence to complete the narrative of events and provided a context for the parties' conduct.  (T at 688).  As this Court has previously noted, the use of prior crimes information to complete the narrative of events and provide context "is proper under both Federal and State law."  Holmes v. Ricks, 378 F. Supp. 2d 171, 182 (W.D.N.Y. 2004); see also Marrero v. Senkowski, 01-Civ- 5867, 2003 WL 21750137, at *11 (S.D.N.Y. July 28, 2003) (noting that "under New York law, uncharged crimes evidence may be admitted when it is inextricably interwoven with the narrative of events").  The court reporter's testimony regarding the details of Petitioner's plea illocution to the forgery charge was proper for the same reason.

Petitioner also objects to the testimony of Terrance Connors.  However, this objection is without merit.  Connors, a handwriting expert, was called as a rebuttal witness after Petitioner denied forging the checks during his testimony.  Connor testified that the

checks had, in fact, been forged. This rebuttal evidence was relevant as to the issue of Petitioner's truthfulness, which Petitioner placed in issue when he took the stand and denied the forgery, as well as to the question of motive. Essentially, this rebuttal testimony was classic impeachment by the use of another witness to show "that material facts are otherwise than as testified to by the witness being impeached." McCormick on Evidence § 33 (6th ed.); see also Thomas v. West, No. 03-Civ-1443, 2007 WL 541476, at *16 (S.D.N.Y. Feb. 22, 2007) (holding that testimony of police officer was permissibly used to impeach defendant's credibility and to rebut defendant's direct testimony regarding a material issue).

Lastly, this Court finds that, assuming arguendo, even if the trial court did err in admitting some or all of the above-referenced evidence and testimony, Petitioner was not deprived of a fundamentally fair trial. As discussed above, given the strength of the prosecution's case, any alleged error would have been harmless.

Accordingly, Petitioner's claim for habeas relief on this ground should be DENIED.

### 3. Ineffective Assistance of Counsel

Petitioner's third ground for habeas relief is brought on a theory of ineffective assistance of trial counsel. Petitioner contends that his trial counsel, Frederick O'Rourke, Esq., failed to withdraw a guilty plea that Petitioner had made to charges of forgery against him.

Prior to his murder trial, Petitioner pled guilty to forging checks belonging to Coy. At the time of that plea, the court indicated that Petitioner would later be allowed to withdraw his forgery plea should he be indicted for Coy's murder. Petitioner's trial counsel

never made an application for withdrawal of the forgery plea. Petitioner claims that, as a result, that forgery conviction was used to impeach his trial testimony and undermine his defense at trial. Respondent argues that Petitioner has failed to show any harm or prejudice as a result of his trial counsel's decision not to withdraw the plea because evidence of the forgery would have been admitted into evidence to establish Petitioner's motive to murder Coy in any event.

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a habeas petitioner must satisfy a two-part test. First, a petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. Id. at 688, 104 S.Ct. 2052. In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." Id. Second, a petitioner must show that counsel's deficient performance prejudiced him. Id. at 694, 104 S.Ct. 2052.

To establish the "prejudice" prong of the Strickland test, a petitioner must show that a "reasonable probability" exists that, but for counsel's error, the outcome of the trial would have been different. Id. at 694, 104 S.Ct. 2052. The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to ... address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697, 104 S.Ct. 2052.

It appears that Petitioner's trial counsel should have acted to allow Petitioner to

withdraw his guilty plea. Nevertheless, even assuming arguendo that trial counsel's decision not to withdraw his guilty plea fell below an objective standard of reasonableness, Petitioner cannot show that he was prejudiced by such conduct. In other words, there is no reasonable probability that the outcome of the trial would have been different even if Petitioner had withdrawn his guilty plea.

First, the Appellate Division concluded that "evidence of defendant's conduct underlying the crimes to which defendant pleaded guilty, i.e., that defendant had forged checks drawn on the account of the victim, would have been admissible as evidence of prior uncharged crimes in any event, because it was relevant on the issue of motive." Johnson, 695 N.Y.S.2d at 464-65. See also; Marrero v. Senkowski, 01-Civ- 5867, 2003 WL 21750137, at *11 (S.D.N.Y. July 28, 2003) (noting that "under New York law, uncharged crimes evidence may be admitted when it is inextricably interwoven with the narrative of events"). Petitioner has failed to demonstrate that the Appellate Division's decision in this regard was contrary to clearly established federal law, or that it involved an unreasonable application of such law, as determined by the United States Supreme Court, or it was based upon an unreasonable determination of the facts.

Second, as noted above, there was such strong evidence of Petitioner's guilt, rendering any alleged error regarding the forgery plea harmless. See Clark v. Gregory, 98-CV-6230, 2002 WL 31663512, at *8 (W.D.N.Y. Oct. 3, 2002).

Accordingly, Petitioner's claim for habeas relief based on this ground should be DENIED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends Keenan Johnson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and that his petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).

                                        Respectfully submitted,

                                        Victor E. Bianchini
                                        United States Magistrate Judge

DATED:      March 22, 2007

               Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.[10]

---

[10] According to the New York State Department of Correctional Services' official website, Petitioner is presently incarcerated in the Attica Correctional Facility, therefore, the correct Respondent is James Conway, the Superintendent of the Attica Correctional Facility. 28 U.S.C. § 2243. In light of Petitioner's *pro se* status, the fact that this will not prejudice Respondent, and in the interests of court efficiency, this Court will deem the Petition amended to change the name of Respondent to James Conway.
    The Clerk of the Court is directed to terminate Floyd Bennett as Respondent, add James Conway, Superintendent of the Attica Correctional Facility, as the new Respondent, and revise the caption of this

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 22, 2007

Victor E. Bianchini
United States Magistrate Judge

---

case accordingly.